**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| Jeremy Joseph Ross, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **1:14cv1356 (CMH/TCB)** |
| | ) | |
| Director, Department of Corrections, | ) | |
| Respondent. | ) | |

<u>MEMORANDUM OPINION</u>

Jeremy Joseph Ross, Virginia inmate proceeding <u>pro se</u>, has filed a petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction of

being a violent felon in possession of a firearm entered in the Circuit Court of the City of

Virginia Beach.   On December 10, 2014, respondent filed a Motion to Dismiss and Rule 5

Answer, along with a supporting brief and exhibits.   Petitioner was given the opportunity to file

responsive materials, pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975) and Local

Rule 7(K), and he has filed no reply.   For the reasons that follow, respondent's Motion to

Dismiss will be granted, and this petition will be dismissed with prejudice.

**I. Background**

On January 18, 2012, following a bench trial, petitioner was found guilty of a single count

of possession of a firearm by a violent convicted felon, in violation of Va. Code § 18.2-308.2.

Case No. CR11-2577.   The facts underlying the conviction were described by the Court of

Appeals of Virginia as follow:

> While on patrol near the Wayside Motor Inn in Virginia Beach on

1

the night of May 4, 2011, Officer Shaun Lindemeyer saw a minivan with occupants inside parked near the motel office. The officer 'ran the tag' of the vehicle and learned that it was not assigned to the minivan. Suspecting that the car might be stolen, the officer approached the vehicle. Appellant was in the driver's seat, and Marsha Turner was the front seat passenger. Lindemeyer testified that Dominique Whitfield-Harris and her three children occupied the back seat.

Turner told Lindemeyer that the vehicle belonged to her stepfather. Lindemeyer saw that the glove box of the vehicle was closed. Turner and Whitfield-Harris produced identification in response to Lindemeyer's request. Appellant said he had no identification, then supplied the police with a false name and social security number. While he conversed with Lindemeyer, appellant appeared nervous and was crouched forward in his seat. Lindemeyer returned to his police vehicle to enter into the computer the identifying information appellant had provided.

In the meantime, Officer Terrence Schultz, who had arrived on the scene, was standing at the right rear corner of the minivan. Schultz saw appellant lean to his left and stretch his left arm toward the passenger side of the car. As Schultz walked toward the front of the van, he saw appellant's hand moving away from the area of the glove box, which was open. Schultz then noticed the handle of a firearm on the front passenger side floor board of the vehicle underneath Turner's foot. Schultz alerted Lindemeyer of his observation, and the two officers ordered appellant to exit the minivan.

As soon as he exited the vehicle, appellant tried to flee. The officers struggled with appellant, and his shirt was torn off. Schultz used the taser to subdue appellant.

Turner testified that on May 4, 2011, she had been dating appellant intermittently for seven years. Turner stated that when she and appellant encountered the police that night, they had given appellant's friend Tyrone, Tyrone's girlfriend, and their children a ride to the motel. When the police officers stepped away from the vehicle, appellant pulled a gun out from behind his back and tried to put it in the glove box. The glove box would not close, however, and the weapon fell to the floor. Appellant told Turner to cover the gun with her feet. Turner stated she was afraid of appellant

> because he could be abusive.  The police charged Turner with
> possessing a firearm after conviction of a felony.  However,
> Turner had agreed to plead guilty to a charge of possessing a
> concealed weapon in return for her trial testimony.

Ross v. Commonwealth, R. No. 0630-12-1 (Va. App. Oct. 18, 2012), slip op. at 1-2; Resp. Ex. C.

Following a hearing on April 4, 2012, petitioner was sentenced to five years incarceration

followed by six months of post-release supervision. Resp. Ex. A.

Petitioner appealed the conviction to the Court of Appeals of Virginia, raising claims that:

(1) the evidence was insufficient to sustain the conviction; and (2) he was denied the right to due

process because he did not learn the name of the backseat passenger, Ms. Whitfield-Harris, until

Officer Lindemeyer revealed it during his trial testimony. A single judge of the Court of Appeals

affirmed the conviction on October 18, 2012, Ross v. Commonwealth, supra, and a three-judge

panel denied a petition for further review on December 14, 2012.  Resp. Ex. D.  The Supreme

Court of Virginia refused petitioner's petition for appeal on March 26, 2103.  Ross v.

Commonwealth, R. No. 120615 (Va. Sept. 27, 2012).

On June 15, 2013, Ross filed a petition for a state writ of habeas corpus in the trial court,

raising the following claims:

> 1.    He received ineffective assistance when counsel
>       failed to discover the name of the backseat
>       passenger, Ms. Whitfield-Ross, who would have
>       testified that 'she did not see [petitioner] with a gun
>       in which [she] also told the police officer.'
>
> 2.    He was denied effective assistance when counsel
>       did not ask the police or discover the name of Ms.
>       Whitfield-Harris in the police report.

Resp. Ex. E.  The circuit court denied and dismissed the petition on the merits on September 13,

2013, Resp. Ex. H, and the Supreme Court of Virginia refused petitioner's appeal of that result on March 27, 2014. Ross v. Clarke, R. No. 131852 (Va. Mar. 27, 2014); Resp. Ex. I.

Ross next turned to the federal forum and timely filed the instant application for § 2254 relief on October 6, 2014. Pet. at 15. Petitioner reiterates the same claims he made on direct appeal and in his state habeas corpus application, and respondent acknowledges that the claims are exhausted.[1] As noted above, respondent has filed a Rule 5 Answer and a Motion to Dismiss, and petitioner has filed no reply. Accordingly, this matter is now ripe for disposition.

## II.  Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas petition, a federal court may not grant the petition based on the claim unless the state court's adjudication is contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Whether a state court decision is "contrary to" or "an unreasonable application of" federal law requires an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court's determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially

---

[1]A federal habeas petitioner must first exhaust his claims in state court, and failure to exhaust a claim requires its dismissal by the federal court. See 28 U.S.C. § 2254(b); Rose v. Lundy, 455 U.S. 509, 515-19 (1982). To comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, in Virginia, a § 2254 petitioner must first have presented the same factual and legal claims to the Supreme Court of Virginia either by way of a direct appeal,  a state habeas corpus petition, or an appeal from a circuit court's denial of a state habeas petition. Matthews v. Evatt, 105 F.3d 907, 910-11 (4th Cir. 1997).

indistinguishable facts." Id, at 413. Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Importantly, this standard of reasonableness is an objective one. Id. at 410. Under this standard, "[t]he focus of federal court review is now on the state court decision that previously addressed the claims rather than the petitioner's free-standing claims themselves." McLee v. Angelone, 967 F.Supp. 152, 156 (E.D. Va. 1997), appeal dismissed, 139 F.3d 891 (4th Cir. 1998) (table).

### III. Analysis

In his first claim, Ross alleges that the evidence was insufficient to sustain his conviction because the Commonwealth failed to prove his ownership of the firearm recovered from underneath his passenger's foot. When Ross made this same argument on direct appeal, the Court of Appeals rejected it on the following holding:

> The trial court credited [passenger] Turner's testimony and rejected appellant's claim that she was biased and unworthy of belief. 'The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented.' Sandoval v. Commonwealth, 20 Va.App. 133, 138, 455 S.E.2d 730, 732 (1995).
>
> Turner testified that appellant possessed the gun when the police approached the minivan at the motel. When the officers stepped away from the vehicle, appellant tried to rid himself of the weapon, but was unable to get it inside the glove box. The gun fell to the floor, and appellant told Turner to put her feet on the firearm. Turner's testimony was corroborated by the officers' testimony that appellant was behaving nervously, that he leaned to his left in the direction of the glove box, that after appellant reached over the glove box was open, and that the police saw the firearm was in the

> location Turner described. Moreover, appellant provided a false name to the police and tried to escape once the officers had seen the gun. Considering all the facts and circumstances, the evidence was sufficient to prove beyond a reasonable doubt that appellant was guilty of possessing a firearm after conviction of a felony.

Ross v. Commonwealth, supra, slip op. at 2-3.

On federal habeas review, the standard for a claim challenging the sufficiency of the evidence supporting a state conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis original). The federal court is required to give deference to findings of fact made by the state courts, and this presumption of correctness applies to facts found by both trial and appellate courts. 28 U.S.C. § 2254(d); Sumner v. Mata, 449 U.S. 539, 546-47 (1981); Wilson v. Greene, 155 F.3d 396, 405-06 (4th Cir. 1998) (citing Wright v. West, 505 U.S. 277, 292 (1992) for the holding that a federal habeas court is prohibited from either "consider[ing] anew the jury's guilt determination or "replac[ing] the state's system of direct appellate review"). Instead, the federal court must determine only whether the trier of fact made a rational decision to convict. Herrera v. Collins, 506 U.S. 390, 402 (1993).

It is not the role of a federal court to review the credibility of witnesses. United States v. Hobbs, 136 F.3d 384, 391 n.11 (4th Cir. 1998); United States v. Reavis, 48 F.3d 763, 771 (4th Cir. 1995); United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989). Instead, a federal court is bound by credibility determinations made by the state court trier of fact. United States v. Arrington, 719 F.2d 701, 704 (4th Cir. 1983). Here, then, accepting the state court's

determination that passenger Turner's testimony was credible, a rational trier of fact could have found from the evidence presented that petitioner possessed the firearm Turner tried to conceal under her feet.   Accordingly, the state court's rejection of this claim was factually reasonable and in accord with applicable federal principles, Jackson, supra, so that result may not be disturbed   here. Williams, 529 U.S. at   412-13.

In his second claim, petitioner asserts that his right to due process was violated when exculpatory evidence in the form of the backseat passenger's identity was not disclosed prior to trial. "In order for a defendant to establish a Brady [v. Maryland, 373 U.S. 83 (1963)] violation, he must demonstrate that the undisclosed evidence was exculpatory and material either to the issue of guilt or to the issue of punishment. The mere possibility that 'undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." United States v. Agurs, 427 U.S. 97, 109-10 (1976). Here, the Court of Appeals rejected petitioner's argument that a Brady violation occurred when the Commonwealth withheld exculpatory information on the holding that the claim "amounted to nothing more than speculation.   Appellant failed to demonstrate that if he had known of Whitfield-Harris' identity he could have secured her presence at trial and that her testimony would have supported his defense.   Accordingly, we do not disturb the trial court's denial of appellant's motion for a new trial." Ross v. Commonwealth, supra, slip op. at 3-4.   Because this holding was both factually reasonable and in accord with controlling federal authorities, Brady, supra, the same result must be reached here. Williams, 529 U.S. at   412-13.

In his two remaining claims, petitioner argues that he received ineffective assistance of counsel.   To establish ineffective assistance of counsel, a petitioner must show that (1)

"counsel's performance was deficient" and (2) "the deficient performance prejudiced the defendant." Strickland v. Washington, 466 U.S. 668, 687 (1984). To prove that counsel's performance was deficient, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness" id. at 688, and that the "acts and omissions" of counsel were, in light of all the circumstances, "outside the range of professionally competent assistance." Id. at 690. Such a determination "must be highly deferential," with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also, Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000) (reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis"); Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994) (court must "presume that challenged acts are likely the result of sound trial strategy").

To satisfy Strickland's prejudice prong, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; accord, Lovitt v. True, 403 F.3d 171, 181 (4th Cir. 2005). The burden is on the petitioner to establish not merely that counsel's errors created the possibility of prejudice, but rather "that they worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimension." Murray v. Carrier, 477 U.S. 478, 494 (1986) (citations omitted, emphasis original). The two prongs of the Strickland test are "separate and distinct elements of an ineffective assistance claim," and a successful petition "must show both deficient performance and prejudice." Spencer, 18 F.3d at

233.   Therefore, a court need not review the reasonableness of counsel's performance if a petitioner fails to show prejudice.   Quesinberry v. Taylore, 162 F.3d 273, 278 (4th Cir. 1998).

In his third claim, petitioner argues that his attorney provided ineffective assistance when she failed to discover the name of the backseat passenger, Ms. Whitfield-Ross, who would have testified that "she did not see [petitioner] with a gun in which [she] also told the police officer."[2]

The Virginia court found no merit to this contention for several reasons, including the following:

> [T]he present allegation otherwise is inadequate to establish counsel's ineffectiveness under either part of the test in Strickland. First, assuming that Whitfield-Harris would have appeared and testified she did not see Harris handle the firearm from the back-seat, it would not have changed the outcome since case law makes clear that contraband possession can be constructive and it can be joint.   Specifically, there was ample evidence proving both Ross's constructive possession and his joint constructive possession with the front seat passenger, Marsha Turner.

> Constructive firearm possession is determined by the same factors applicable in a constructive drug possession case.   See Adkins v. Commonwealth, 57 Va. App. 2, 22, 698 S.E.2d 249, 259 (2010). To 'establish constructive possession of the firearm by a defendant, the Commonwealth must present evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving the defendant was aware of the presence and character of the firearm and that the firearm was subject to his dominion and control.'   Adkins, 57 Va. App. at 22, 698 S.E.2d at 259 ....

> Thus, 'possession and not ownership is the vital issue.   Possession may be joint or several. Two or more persons may be in possession where each has the power of control and intends to exercise control jointly.'   Id. at 23, 698 S.E.2d at 259.

---

[2]Petitioner filed an statement from Ms. Whitfield-Harris as an exhibit to the state habeas corpus petition, and again in this federal proceeding.   In its entirety, it states: "I, Dominique Whitfield, was with Jeremy Ross on May 4, 2011.   I did not see him with a gun in which I also told the police officer. We tried to contact his lawyer but we have gotten no response.   This is why I am getting my statement notarized."   Pet., Ex. A.

> As the Court of Appeals ruled in its denial order of October 18, 2012, the trial court 'credited Turner's testimony and rejected [Ross's] claim she was biased and unworthy of belief.' Even assuming Whitfield-Harris would have testified she did not see Ross touch the firearm, her testimony, at best, would have been marginal, and would not have affected the outcome of the trial.
> Finally, defense counsel states in an affidavit she asked Ross several times for the name of the 'potential witness and he could provide [her] with it or any way to possibly contact her.'   Under these circumstances, Ross can hardly attack counsel's performance.
> Further, he has certainly failed to demonstrate prejudice within the meaning of Strickland.   This claim is denied and dismissed.

Resp. Ex. H, Final Order at 5-6.[3]

For the reasons articulated by the state court in the foregoing order, petitioner's third claim fails.   Given the fact that the trial court credited the testimony of the front seat passenger, Ms. Turner, that petitioner asked her to hide the gun under her feet after his attempts to conceal it in the glove box were unsuccessful; the testimony of Officer Schultz that he saw petitioner reach toward the open glove box; and petitioner's own behavior of giving a false name and social security number to the police and then trying to flee the scene as soon as he exited the minivan, there is no reasonable probability that testimony by Ms. Whitfield Harris that she did not see petitioner with a gun from her vantage point in the back seat of the vehicle would have resulted in petitioner's acquittal.   Therefore, the state courts' rejection of this claim was both factually reasonable and in accord with Strickland, supra, and the same result must pertain here. Williams, 529 U.S. at   412-13.

In his fourth claim, petitioner argues that he received ineffective assistance of counsel

---

[3]Because the Final Order of the circuit court was the last reasoned state court decision on the claim at issue, its reasoning is imputed to the Supreme Court of Virginia, which refused further review without explanation.   See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

because counsel failed to examine the police report which he assumes contained Ms. Whitfield-Harris' name.    Even if it did, this claim fails for the reasons discussed above in connection with the third claim - namely, that had Ms. Whitfield-Harris been procured as a witness, her testimony would not have changed the outcome of the trial.    Accordingly, the state court's denial and dismissal of this claim, Resp. Ex. H, Final Order at 8, was in accord with Strickland, supra, and will not be disturbed.

## V. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss will be granted, and this petition will be dismissed, with prejudice.    An appropriate Order shall issue.

Entered this ___24th___ day of ___April___ 2015.

_Claude M. Hilton_
United States District Judge

Alexandria, Virginia